of enhancements that were imposed upon the appellant. The government concedes this in part with respect to the criminal history calculations. So that's where I would like to start and then I would like to discuss the loss calculation. The first part of the criminal history calculations is the marijuana offenses, which is the offenses listed in PSR 40, paragraphs 42 and 43. As I argued in my brief, these offenses do not meet the prior sentence under 4A 1.2, nor do they meet the criteria for a countable diversionary disposition under 4A 1.2F. The government understands that these offenses do not meet that criteria, so they have conceded the point. They have also asked for... Let me confirm what the record shows. I think it's correct as to one of the marijuana convictions, but the PSI indicates there was a finding or admission of guilty for the September 17, 2015 offense. In her amended response, as Ms. Wright's response, she admits a no low contendory plea for the November 17, 2015 possession. There is a no low contendory plea, which under our precedent constitutes an adjudication of guilt. I think Your Honor is referring to the offense in paragraph 43 of the PSR, I believe. Well, I've got PSR paragraph 22, and then I've got document 38 at 1. That's in the amended response to the PSR. She admits she entered a no low plea for the September 17, 2015 marijuana. I think you're right on the other one, there's insufficient evidence, but even her admission in the other one of a no low plea to that one would be sufficient. Is that not correct? I believe you are correct. Candidly, when I was doing the brief and I was looking at the criminal history part of the analysis of the PSR, I didn't really see that. I think Your Honor is correct, but it does only go to one of the priors. I think we need to remand the other, if we like, remand on the loss or whatever, and just look at it all again to recalculate. Correct. So where does that leave us, if there's plainly a problem with one and not with the other? Does the case have to go back? Yes, Your Honor, because it does reduce the ... Just lay that out as to why, as you see it. Because it reduces the criminal history points, which also would reduce the criminal history category. It goes from five to four, possibly. Does four stay at a three? It does, but in conjunction with the traffic violations that I'm going to be arguing, that would cause the criminal history category to go down. That's why I asked my question. If we would agree with you on the first, but disagree with you on the trafficking issue, does it have to go back? You may be right on both, but I'm just asking. If you're wrong on trafficking, does the matter go back? The criminal history ... Well, it would go back to correct it, but it wouldn't change the criminal history category. So if it's just one of the ... It's essentially just the Scribner's error, but it would have no impact on the sentence. Correct. All right. So I'm not going to belabor the point on the marijuana cases anymore. I'm going to go ahead and move on to the traffic violations, and that's the PSR paragraphs 38 through 40. There, the PSR has assigned three criminal history points for traffic violations, and the appellant did object below. The counsel stated that he felt that the PSR was inaccurate as with respect to the description of these traffic violations, and also objected to having three points versus one point because he believed that they were related cases and only should get one point. That's because the sentence was responded to the objections of the defendant and never at the sentencing entered any type of evidence with respect to these traffic violations. So on that basis alone, I think the court can find that the traffic violations only get one point because the government did not meet its burden to prove that these were separate offenses, and so the court should find that they are related and only get one criminal history point. Well, I looked at it a little different. I thought we know when the citations were given and that there is one arrest in between. I think I defy your argument, at least just speaking for myself, just getting the citations, not arrest. Well, Your Honor, we don't even have . . . But there was one arrest here. I'll look back here, and you can tell that from the PSR, an objected to fact. Well, there's two things. They were objected to in the objections. The defense did object, and he said that he believed that the PSR was inaccurate as to the sentences. Did the court rule on the objection? No, it did not, but the objections are in the written objections of the defense, and there was no response by the government, and there was no . . . Did they argue about them at the sentencing hearing? No. At the beginning of the sentencing hearing, the court assured the defense counsel that his written objections were preserved, and he invited counsel to elaborate or even change some of the objections if counsel wanted to, but the court specifically stated on page four of the sentencing transcript that those objections were preserved. The court chose not to rule on them, though. Did the court overrule all the objections or anything? Well, the court found a criminal history to be criminal history three, so by inference, you can find that it overruled, but it didn't really say much, but again, it was the government's burden to come forward because of the objections, and it could not rely on the PSR statements. So there's no evidence of the citations. There's just evidence of the recitation and the criminal the government didn't enter anything, but I will also point out that if somehow the court decides it wants or it can rely on those PSR assertions, but again, I'm not conceding that. I think that it cannot . . . The first and second violations do not have an intervening arrest, even if you took the PSR, what it says, because it does say that there was an arrest on a capeus, but that arrest goes to both the first violation and simultaneously initiates the second violation. So there's not an intervening arrest after which the second case occurs. So even if you took the PSR representations, which again, I don't think you should, but even if you did, you would have to reduce the criminal history points by at least one because the first . . . Counted two. Yes, and that would cause the criminal history to be reduced by a total of two. And you have some argument independent of the PSR proper as to why it should be down to one rather than down to two. I'm sorry. Well, in reading your briefs, I took the arguments of one side to be that it should be one and the other side, it should be three. Correct. If you look at the PSR, it looks like it should be two, assuming that a citation is not an arrest. That would be true if the government had carried its burden, but it didn't. The defense objected, so it was on the government. Objected to that particular . . . Yes. Objected to the characterization of number 39, basically. Yes, it said that it believed that the PSR was inaccurate with respect to the traffic violations and its sentences and when they were imposed. I see.  The district court didn't really need to get to that because it said that the citations were arrests. Is that right? The district court didn't make an explicit ruling. It just said there were three. It just came up with a category of three. That's correct. I see. Thank you. What about the loss, the calculus of the loss? That's another part of your argument, right? That's correct. Why don't you go to that in the two minutes you have left? Can I ask one to make sure? But there was an arrest. I know you say there's no evidence with the PSR, but if we accept the facts in the PSR, there was an arrest between the second and the third traffic. Yeah, there was an arrest. I think it was on October 24th. There was one arrest between the second and the third offense, but there was no arrest between the first . . . First and the second. That's correct. I just want to make sure. If you don't mind, if that's correct, then you don't have an argument that there's only one. You have an argument that it's down to two then, right? Am I understanding it correct? If there is an arrest, then these convictions are . . . there's an intervening arrest between the . . . that meets the standard. Our position is that because it's the PSR assertions that you would have to rely on that have been objected to, the government needed to show some sort of evidence of how these proceedings occurred. Oh, so you say there . . . although there was an arrest, they didn't show that there was an arrest. Is that your position? No, I'm not saying that there was an arrest. So you're contesting whether there was an arrest? That's correct, because the defense, if you look at the objections of the defense . . . I misunderstood. I thought you told Judge Hill that there was an arrest. If you rely on the PSR assertions, which I don't think the court should. It represents that it was, but you say you objected to it because the governments need to present evidence. Correct. Okay, now I'm going to move on to the loss. I'm sorry, just one more time, but if the PSR is not specifically objected to or there's a response . . . I've got to check the record. It does state there was an arrest between the second and the third. If you take the PSR . . . At face value. Correct, but that would . . . the first and the second traffic violations, however, would still be related. They'd be one. It would be one point. Thank you for that clarification. Go ahead to Judge Marcus's question on loss. Okay, so with respect to the loss, the government is asking for $7.7 million of loss. Part of that figure, $868,000, is the tax loss, which we are not contesting. The $6.9 million of loss that it's requesting is based on 2B1.1 Note 3FI, which states that a minimum loss for access devices is $500 per access device. Now, the problem with the government's position is that it never even approached showing that there were access devices, so that Note 3F isn't even triggered because there's no evidence in the record that they based that loss figure on an access device. What the government does show, it relies on the factual profit from the plea, and the only thing that's listed in the factual profit of the plea is a more broad term of identities, which the government never defined, and PII, which is personal identifying information. Those two terms are very broad. They're similar to terms that are defined in the guidelines like means of identification or personal information, which are both defined in 2B1.1 Note 1, where all the definitions are. Those are very broad terms that include not only numbers and names, but it includes things like fingerprints, voice prints, retina scans, and it doesn't have the purpose for identifying information that the government refers to in its factual proffer is to simply identify a person. Very different than an access device. Access device is a specific legal term. It's defined in the guidelines under 2B1.1 Note 10A, which incorporates the statutory definition under 18 USC 1029E. An access device is a number or a code or a card or something of that nature that gives another person access to an account or some money or something of value. That's also a personal identification number. Right, like a PIN. It gives you access... Personal identification number. Why not social security number or personal identification number? It may be. I don't think that this circuit has decided that issue in a published decision, but the government... A lot of circuits have decided that, and we have in many non-published cases. But what the government relied on... Is that correct? Yeah. In some unpublished decisions, there is reference to social security number. And other circuits have said a personal identification number. I don't know whether it's right or wrong. We got to go to the rest of the clause. Is a social security number. Is broad enough to encompass a social security number. It may be. It's not definitively decided by the circuit. But that is not really relevant to this case. Because in this case, the government didn't say that it had a certain number of social security numbers. The only reference to social security numbers the government relied on was in paragraph 12 of its factual proffer. It said that it had numerous social security numbers. Numerous is not a number that you can put a figure to. Okay. So the social security numbers are... You know, that issue is... Maybe in another case might be relevant. But for here, it really doesn't help the government. We're down to where the credit card numbers. Is that it? In the factual proffer, the only quantifiable access device that we would concede is... It said that it had 331 debit cards. So we would concede that those debit cards... That's in paragraph 14 of the factual proffer. We would concede that those debit cards are access devices. Why aren't credit cards also... The government didn't list any credit cards. It only listed PII information, which it did not describe, and identities, which it did not describe. The only other thing that it referenced were these cards, which it quantified at 331. And I'm just going to turn to the factual proffer, just so your honors have an idea of how very vague its factual proffer is. In paragraph 12, it starts out by saying that 12A1, it had four notebooks with personal identifying information, PII, in them. I've got it here. What paragraph? Paragraph 12A. So it says it's PII information that these notebooks had in them. And that's all the description there is. It doesn't tell you what the PII is. It doesn't tell you how much PII there is. It just says PII in them. In paragraph 12A2, it talks about two computers. The evidence is on the screen of one numerous social security numbers, but it doesn't give you a number. It just says numerous. And then it says, and other PII information. So it doesn't tell you what the PII information is. It just says it is. Let me ask you a different question. You also make the argument that the district court erred by failing to make a particularized finding regarding the scope of the activity. Right? That's correct. Tell me about that. Well, with respect to that, I think that the argument that I would talk about here with your Honor is- Does the district court make any finding about the allocation of responsibility? No, it didn't make any specific finding. Is that fatal error? Yes, it is. Tell me why. Well, because the loss needed to be proved and the government, you know, the court didn't have any findings to- So the court could not allocate responsibility to the defendant for the acts of others in the course of the conspiracy and until and unless the trial judge made a determination about her role in the scope of the activity. That's the essence of it? Yes, your Honor. And there was no such finding? No, your Honor. Was that argument raised below other than with respect to the bag and the suitcase and with respect to the- The time period. The $70,000? No. It was only raised with respect to those two issues. Is that correct? Yes. With respect to the time period of the conspiracy and with respect to the- There's a black trash bag and a maroon suitcase. I understand. There's a suitcase, a trash bag and $70,000 or something like that from a prior period. Correct. Other than that, you really didn't make this argument you're making below. Is that correct? Yes, but- General argument, we would review only for plain error. Is that right? Yes, but let me just back up a little bit. The maroon suitcase and the black trash bag are a big deal because if you read the government's response, they say that the bulk of the information was in those items. No, I understand that, but if we disagreed with you on the suitcase and the bag and is it $70,000 or something like that from the previous period? If we disagreed with you on that, then the remainder of the argument that Judge Marcus was asking you to respond to or to describe because it's your argument was not raised below. That's all I was asking. So we would have to look at- Well, I would say- Is that correct? Yes, it is. I would just like to also explain that the loss figure was disputed all the way through. They had to take a paragraph out of the plea agreement because they didn't agree on the loss figure and they carried it all the way through into the sentencing, but the specific argument that I'm making about access device, that particular objection was not raised by the defense. In addition, if we were to look at it as a matter of plain error, then the key number here is $3.5 million, right? You'd have to get- The argument would have to result in a reduction of loss of several million dollars. Is that correct? Yes, to get down to two points, but let me just say- Right, it wouldn't help you with the point that Judge Rogers is making. Unless you got to that base, it wouldn't make any difference. Correct, but again, even though it's on plain error, this is plain error because you have very clear- Right, there has to be an error. It has to be plain. It has to affect the substantial rights. Correct. And overlaying all of that, it has to go to the fairness and integrity of the proceeding, but it's the third prong of that plain error analysis that I think the question is going to. How would it affect his substantial rights? Because it affects the guideline calculation. When you go through the factual proffer and you see that they have no access devices except for 331 debit cards, that reduces the loss to about a million dollars, just under a million dollars, and that's a difference of four points under the guidelines. So that does matter independent of the other items, the trash bag and the suitcase. Yeah, as far as the access, because if you read through, and just to, I want to address the- Sharpen the question and the answer. It makes a difference even if we were to disagree with you about the trash bag and the suitcase. Yes, and I would like to address the trash bag- You've only got a moment or two because we've gone way beyond. We've already 10 minutes over, so take just a moment to make it. Okay. I just wanted to call your attention to, again, the factual proffer with the black trash bag and the maroon suitcase. Again, there's no quantity. It's just a category that they're trying to substitute in for access device, and they're two separate things. What about the statement they found 12,124 identities of persons in all, whether it was credit card, tax returns, or so forth? What about that? If they had specified what about the identity they had, so that it could meet- So they should have said showing social security. They're just missing that word. It's missing evidence to show that it meets the criteria of an access device, which is a very specific and defined term. Well, it says personal identification number. No, it says personal identification information, and it says identity. Those are terms that are similar personal information as defined in the guidelines. Thank you. You've answered the question. Thank you, Your Honor. Thank you, and we'll give you your full rebuttal. If it may please the court, Trinity Jordan on behalf of the United States, and with me this morning is Cynthia Wood, who was the trial AUSA. I will just go in order of the Pellet Council and the issues that she addressed to you this morning here. The district court probably assigned criminal history points to Wright regarding her prior convictions for driving while her license was suspended. You got to look at exactly what, too, was objected below. The Appellant Council made assertions here this morning that all this was actually objected to, but the actual objection was that whether it was a 30-day sentence or a 38-day sentence in regard to these traffic citations. It wasn't the actual facts of if there was a citation, if there was an arrest. It was how long of an adjudicated sentence took place. And so under the guidelines in 4A1-2C2, when you look at suspended license, it didn't matter if it was a 30-day adjudicated sentence or a 38-day because 30 was the cutoff of when you can actually use the driving under a suspended license to calculate criminal history points. So that's why the district court judge took into account that there was three citations, one that actually had, I guess, two citations and two arrests, or one citation, two arrests, and calculated this with three criminal history points. And this wasn't just the three times that she had driven with a license suspended or revoked. This was actually six times that she had done this. And the district court properly assigned those criminal history points. I ask about, I'm a little confused by that, numbers 38, 39, and 40. Is that what we're talking about now? Yes, sir. Yes, sir. And that's what was disputed in the briefs. I'm going by what I read in the briefs, right? You're right, Your Honor. And I took the two positions to be, you took the position that those were three criminal history points because there was an intervening citation which amounted to an arrest. Yes, Your Honor. That was your position. Yes, Your Honor. So there were three, and your opposing counsel's position I took to be there was one because those don't count. But it appears, as Judge Hull mentioned earlier, that there is an intervening arrest according to the terms of the PSR. Correct, in paragraph three. So really there should, if we disagreed with you as to whether a citation is an arrest, that would leave two points. Is that correct? Correct, if you disagree. You don't make that argument in your briefs. No. Is that correct? No. Why not? In fact, the other side says you concede that if a citation is not an arrest, there's only one. If we concede that, but we don't concede that. I understand. But if we disagree with you on whether a citation is an arrest, then you concede that these should only be counted as one? They say that you do, in effect, conditionally concede that. Do you or don't you when there appears to be, from the language here, one intervening arrest? That's my question. No. I mean, if this court happened to disagree with us, then... That's what I'm asking. Assume for the moment, we can't pre-decide it. I don't know what my colleagues will say, et cetera, et cetera. Assume for the moment that a citation is not an arrest. Right. And there would be two. And you, she, your opposing counsel, suggests that if that's the case, you concede that there's only one point from these three items. But I'm wondering why you didn't argue that there would be at least two. Are you with me? Yes, yes. What's the answer to that? Well, if you look at the briefs too, it's interesting that we were actually the ones that pointed out this discrepancy. I'm not asking that. I'm asking what your position is. Right, right. Are you conceding the point? That's really a simple question. No, we're not conceding the point. Even though you didn't raise it? Right. Okay. Why not? Maybe because this morning defense counsel conceded a citation is okay for an arrest? So what do we do here if we disagree with you on the citation issue? Two circuits disagree with the district court on that, right? Correct. Then it would be two. What would be the thing to do here? To send that back so that you all can make arguments you didn't make before? Or just say that amounts to one and figure it out from there? Well, I mean, it would be two criminal histories. You're arguing about what the, each side's arguing about what the other side conceded. It's confusing. Right. Your Honor, it would be two criminal history points if you disagreed with us on the citation issue and because we've conceded the fact that it needs to be remanded to be recalculated anyway based on the marijuana. That the district court should then rule on whatever objection there is to what appears to be one intervening arrest? Absolutely, Your Honor. Okay, thank you. Absolutely. But we do believe that the intervening arrest, the citation is an intervening arrest within the context of the sentencing guidelines. And we do believe that Morgan and the Seventh Circuit was correct in establishing that in this cabin within the sentencing guidelines that that word arrest does equate to the citation that was issued. And so there should be a criminal history point attributed to that specific driving. Judge McEwen has a pretty forceful, I know you don't agree with it, concurrence in the Ninth Circuit. How do you respond to her points? No, I, so in her concurrence that this idea of, you know, the average everyday person without a law degree would read the word arrest and would say you have to be handcuffed and taken down to the police station. But I also believe that if the average everyday person on the street without a law degree if you explain to them this is why the sentencing guidelines were put into place is to punish recidivism that takes place. And this is people that constantly are breaking the law and to have uniformity across the United States. I don't think it matters how many times you did it. It cannot be that handing somebody a citation at the window of your car and allowing them to move on is an arrest. I mean, so I think you need to move on to your next, we got that? Yes. Okay. Yes, Your Honor. What do you want to go to next? We can go to talking about the calculation of loss. Yes, and let me ask you a question about that. Did the district court make a particularized finding regarding the scope of the criminal activity the defendant undertook? And if the answer is no, does that not require vacator and remand? No, the district court did not. And no, it does not require vacating it or remanding it because this was not, this was all conduct that was attributed to her and her apartment with, on her possession. This wasn't, this wasn't any other conduct or any other items that were found in any other place with any other persons other than her. So there, there didn't. Your point is that she was only, everything that was attributed to her was attributed to her for her own direct conduct rather than vicariously through the act of others involved in the conspiracy. Correct, Your Honor. Therefore, the district court was not obliged to make a particularized finding of scope. Correct, Your Honor. Correct. And to the objection below when it came to this calculation of loss, it wasn't if this was access devices. That's raised for the first time on appeal and here on plain air. But what was objected to below, as Judge Rogers pointed out, was, hey, anything that happened pre-September when it came to the IRS refund amounts, which is that $70,000, which the government conceded, it doesn't matter for the calculation of loss. The probation office wrote it in the PSR amendment. It doesn't need to be even taken into account. That was objected to. The other objection was the black trash bag and the maroon suitcase. We had a total amount. There wasn't an objection to the total amount. That wasn't the objection. It was just within this total amount, these two items were not to be attributed to the defendant. The government put Agent Stager on the stand and Agent Stager said, listen, we executed the search warrant eight months, he actually said six months on the stand, but it was eight months after the defendant had been living there. The claim from the defendant was, this was left by a prior tenant. And Agent Stager said, we executed the search warrant six months, but it was eight months after she had been living there. I talked to the property manager. The property manager says, there's no way anything could have been left there because any time a tenant moves out, we go in through and clean the place and we repaint the place. And so I think counsel is more or less agreed that they didn't raise this argument in a general sense, but as a matter of plain error, which would apply if they didn't raise it, that not enough of the stuff, whether inside the bag or not, could have $500 attributed to it. And so therefore, more findings are necessary. You're right. You're right. I'm taking her argument anyway. Well, I think there's two arguments kind of sandwiched in here is, one, the total amount that was found there, and then the second argument is, are these unauthorized access devices? And that's the argument that's now being raised. And the reason why I would say that it fails under plain error is what was pointed out here this morning, is there's no case on point in this circuit, nor the Supreme Court, that would direct the district court that Social Security numbers are not unauthorized access devices, or that these job applications with birthdates and personal identification information that would allow somebody, as Judge Hull was pointing out, 18 U.S.C. Section 1029E doesn't just say personal identification number. It also says, or other means of account access that can be used. You can access somebody's account with a slew of information about them. This wasn't just mail that was, you know, somebody was stealing a bunch of mail and hoarding it in their house. The proffer says that we, not only do we have Social Security numbers, we had gift cards, debit cards, credit cards with other people's names on them, job applications from the Department of Labor. So all this was- I think her argument is you don't have numbers associated with all of those items. It doesn't say we have 300 of item X and 500 of item Y. You're correct, Your Honor, that the only number that was specifically attributed was the 331 gift cards, debit cards, and that's on page 6 of the factual proffer. I know that we were referring to earlier in the factual proffer, but on the very end of the factual proffer, it actually does say credit cards, debit cards, and gift cards 331 with other people's names on it. It does specify that they found 12,124 identities in the apartment and that 2,090 identities were actually found on the computers and a flash drive that was located in the apartment. So yes, it wasn't specifying like within this laundry list, this is how many were Social Security numbers. That's her argument, right? Right, but that's not what was objected to below. It was just which ones out of all of these were not the maroon suitcase and the black trash bag. Go ahead. You're correct to distinguish between the argument about what's a PII and what's not, but what about a different argument? I'm not sure it's raised, but I'd like you to address whether it was raised and if so, what the answer is, that there wasn't enough of a determination as to how much was attributed to this defendant vis-a-vis other members who were dealing with these things who were operating out of her house. There was no breaking out of how much of that was attributed to her as opposed to attributed to other people. Is that argument being raised? Well, it was raised in the sense of the minor role reduction below. No, I'm not talking about that. But in this sense, it wasn't raised in this calculation sense of the calculation of loss. And what would you do had it been properly raised? Can you sketch out what your response to that would be? Because there's not much in there that says how much was attributed to her versus these other people. We don't even know who those other people are. Right. Well, this was directly attributed to her. I mean, this was she'd been living there for eight months when all this was found. She's the only one. Your answer is a simple one. Your answer is there was no reason to attribute this much to her, that much to the other one, and then say she's responsible for the other conduct because everything was attributed to her directly. It wasn't a vicarious or a derivative kind of attribution. Is that the heart of your argument? That's exactly it, Your Honor. And that's why the government even conceded to the $70,000 of IRS government claims prior to September that would not be taken into consideration for calculating loss is maybe it was attributed to somebody else, but it wasn't going to affect anything on her sentencing. If there's no further . . . I'm looking at the pre-sentence report and also the proffer, but the pre-sentence report is defining the PII. It's clearly being defined as PII, personal identification information, to track the access device definition, and she admits thousands. I mean, the PSR says thousands of PII information, and the PII is defined as personal identification information. Okay. Was there an objection in the district court that, like she says, there was objections to the PSI, but they didn't quantify it sufficiently, the number of Social Security numbers or the number of personal identification? No, there was not an objection to that. No objection like that? The objection was the trash bag, the maroon suitcase, and even at the police . . . Don't hold me accountable for that. That wasn't there. I mean, that was already there when I leased the apartment. Right. And at the plea colloquy, that's what defense counsel actually said, too, is when the factual proffer was given was, we're going to argue loss at sentencing. So it wasn't . . . they weren't arguing about the numbers. The numbers of personal identification. Correct. Thousands. Correct, Your Honor. Correct. If there is no further questions, Your Honor, the government requests that this case actually should be remanded solely for the recalculation of Ms. Wright's criminal history points as to her prior possession of cannabis charges and affirm the district court's ruling as to the other issues on appeal. Thanks very much. Thank you. Ms. Foldis, you reserve five minutes. Okay, I would just like to start with the loss. Below, it was objected that there was . . . that the scope of the conspiracy was more narrow for the defendant than what the government was saying. That was an objection. Is it fair to say, though, that what the judge did is he attributed everything in that apartment to her and therefore did not have to make this kind of particularized finding derivative vicarious finding? Everything was her responsibility. It was in her apartment. I don't think that is a fair . . . Is that not a fair way to read it or is that wrong? I think it is not a fair characterization because there was evidence and even the agent explained that there were other individuals involved and under the Guidelines 1B.1.3 about relevant conduct, even in a conspiracy, you still have to figure out what part of the conspiracy the person is responsible for. I don't think it could just be attributed to all of her because there was evidence to the contrary. There was the admission that there were other people in the conspiracy and there was no particular finding even though the defendant was objecting to her role. If the trial judge had said it occurred in her apartment, it was all there, I attribute the whole loss to her. I need not break it down between her and other participants in the conspiracy. When I get one of them in front of me, I'll take care of them. But as for her, it's easy. Well . . . If he had said that, that would have been the end of it, right? If he had made a particular finding about . . . He had said what I just said. You couldn't make your argument that he failed to make a particularized finding. The thing is that the defendant had in front of the judge specific objections about not only the date of her participation, but also with respect to the black trash bag and the maroon suitcase, which the government has acknowledged was the bulk of their loss calculations. I think the judge was . . . It was imperative for the judge to make some sort of finding with respect to those items at least. On that basis . . . As to the scope of Wright's own criminal activity. As to the scope of . . . No, the criminal activity within the conspiracy . . . Right. She was denying . . . What her responsibility particularly was. She was denying that the trash bag and the maroon suitcase, that she had anything to do with those. So the judge needed to make a finding there. On that basis alone, I would say that the case needs to be remanded. I just want to go back to the issue that admittedly was not raised below, which is the access device issue for the loss calculation. I'm going to go back to the factual proffer, because I think it's very important to understand that Note 3F is a very specific rule. In order to trigger that, you have to have an access device. If you read through the proffer, and we've conceded 331 debit gift cards, those are access devices. But that's $165,000 worth of loss, not $6.9 million. It's as though the government, for the rest of it, came in with a big black trash bag, put it in front of the judge, and said, here's a big black trash bag of personal stuff. I'm not going to tell you what the stuff really is, and we're not going to tell you how much stuff is really in this bag, but here's a big black bag of it. So on that basis, Your Honor, give us $6.9 million worth of loss figure based on access devices. That kind of argument, when you look at the factual proffer, that's exactly what the government did. And there's no reasonable basis that the judge could base a loss figure for an access device based on a big black trash bag of personal stuff. Because personal stuff is not an access device. And if I could just go back also to the traffic violations. Counsel was making some representations as to what the actual objections were that counsel made below. Counsel said there appears to be a possibility of an inaccuracy with the sentencings and the date of the imposition of those sentencings. So counsel wasn't just objecting that it should be one point versus three. He was objecting to the dates that were listed in the PSR, as well as the number of criminal history points that were given. So it was incumbent upon the government to come forward with evidence of the traffic violations. Is it your contention that that second driving while suspended did not have a, had a, was a citation rather than an arrest when the PSR explicitly says arrest? It wouldn't matter because the arrest, if it was an arrest. If it was an arrest, it would have happened prior to the third offense. Well, the third offense, okay. That's what I'm saying. It would have broken it down into two. But there was a specific objection to the accuracy of the PSR. It would then became the duty. It wasn't that specific. The way you just put it. The objection just says the numbers are wrong. No, it doesn't say the numbers. It says the dates are wrong as well. Okay. It says nothing about that if an arrest, if it was an arrest, if it was not an arrest. Well, it states that. And I would also just like to cite to you. Well, you're going to have to bring it to a close in literally one sentence because we've already gone 11 minutes over on your argument. United States versus Smith, 39 F 3rd, 1143, with respect to the objections that defense counsel made. Thanks very much. Thank you very much. Thank you both. We'll proceed to the next case.